Court will hear argument next in case number 24-1962. Coursera v. Attorney General.  Ah, correct. 24-1963. Correct. Thank you. I have to blame whoever typed these notes up, which would be me. Proceed, Counsel. Thank you. Thank you. Good morning, Your Honors. May it please the Court, my name is Martina Cirillo from Rutgers Law School. On behalf of the petitioner, Miguel Rovés Corcuera, with the Court's permission, I reserve three minutes for rebuttal. Granted. This case is about the deprivation of the right to counsel in immigration court in removal proceedings, and I'd like to cover three main points today. First, the Board of Immigration Appeals lowered and misapplied the standard for a continuance request to seek counsel. from the correct standard, which is laid out by the BIA itself in matter of CB, as a reasonable and realistic period of time to provide a fair opportunity to seek, speak with, and retain counsel, to simply a reasonable opportunity to obtain counsel. And each of these words has meaning. The BIA would not have elongated the standard for no purpose at all. In using the proper standard, the Board of Immigration Appeals would have had to consider whether the immigration judge's denial of my client's continuance request, which in this case was after just 42 calendar days or 28 business days in the middle of the busiest holiday season of the year, December 1st to January 12th, was both reasonable and realistic, and whether he had a fair opportunity to not only seek and speak with counsel, but importantly, to retain counsel. Why is that, if we can pick up on that point, why is that the proper timeframe to be looking at? Because the petitioner presents himself some eight months or so before this hearing, right? During that time, he receives multiple notices of his right to retain counsel, as well as lists of free and low-cost attorneys. And for at least some five months before he is incarcerated for new criminal conduct, he doesn't, I mean, there's nothing going on there in the record. So why are we looking at 42 days as opposed to eight, you know, eight-plus months? Yes, Your Honor, so we would submit that you cannot, this court cannot calculate the amount of time of when an individual is on a right of their notice to counsel from the issuance of the notice to appear, which starts the removal proceedings, or any of the subsequent hearing notices, for three reasons. First, the notice to appear and all of those hearing notices are in English, which Mr. Robles does not speak or understand. Second, at the time that the notice to appear was issued, Mr. Robles' next hearing on the non-detained docket was over three years in the future. It was scheduled for July of 2026, and his one-year filing deadline for asylum was one year in the future. He has one year from his date of entry. So practically, it would not have made sense for him to hire an attorney right away. He was taking the time to earn money, to work, to seek an attorney. His entire reason for coming to the United States was to seek the benefits of asylum. And so is your position really that for five months after he presents himself, his priority isn't to find counsel to make that application when he's been notified of a 12-month deadline? We would submit that he had the time. I mean, for a person in Mr. Robles' position who is not an English speaker and who is of low education, knowing that he has three years before his next court date is an implication that he does not have to seek counsel at this time right away. And then the third point is that there is no case known to counsel holding that the right to counsel advisals starts from the issuance of that notice to appear. In fact, every case that I've read on this issue starts the clock from the immigration judge's first oral advisal during the hearing, and we are asking, therefore, this court to do the same. And so returning back to the standard, which looks at reasonableness and realisticness, we would have asked the Board of Immigration Appeals to look at several factors, including, but not limited to, detention status. In this case, Mr. Robles was detained. The geographic location of the detention facility here, Moshannon Valley Processing Center in the middle of Pennsylvania. His access to phone calls and legal visits. Language barriers. Here, as I said before, Mr. Robles did not speak English. His financial status. He is indigent. He cannot afford to hire private counsel. And whether the request was a dilatory tactic. All of these favors weigh heavily in Mr. Robles's – all of these factors, excuse me, weigh heavily in Mr. Robles's favor. Yet the Board of Immigration Appeals simply stated that he was granted two continuances to seek counsel, and he was provided a list of legal service providers. Why was he detained, remind me? He was detained after a criminal arrest. So on about October 6th, he was criminally arrested, released from the state of New Jersey on bail after considering several factors, and then immediately detained by ICE. Going below the Board of Immigration Appeals, the immigration judge in this matter actually skipped over the proper legal analysis altogether. By in some unknown way and without even asking the bare minimum requirements, the bare minimum questions, she made a determination that Mr. Robles made a knowing, voluntary, and intelligent decision to waive his right to counsel, despite him saying that he had spoken to an attorney the day before and wanted to hire that attorney. To obtain a knowing and voluntary waiver of the statutory right to counsel, the immigration judge should have, at a minimum, inquired specifically as to whether he wanted to continue without a lawyer, and then, too, received a knowing and voluntary affirmative response. But here, the immigration judge did none of that, instead ignoring Mr. Robles and conducting, essentially, a mini-trial without ever giving him the opportunity to apply for asylum, withholding of removal, and relief under the Convention Against Torture. Which brings me to the second issue, which is the immigration judge's failure to follow the proper procedure when an individual expresses a fear of return to their home country. So, pursuant to the regulations and BIA precedent, when an individual expresses a fear, and that part is important, expresses a fear of persecution or harm in a country to which he might be removed, the immigration judge must take three steps. First, advise the person that they can apply for asylum or withholding of removal. Two, ask him if he wishes to apply for those forms of relief. And three, make the required forms available to him. And that's if the petitioner is apparently eligible for the relief, right? The regulation says if the individual expresses a fear. It doesn't say eligibility. So here, the immigration judge steamrolled Mr. Robles, never advising him that he can apply for asylum or withholding, never asking him if he wished to apply for those forms of relief, and certainly never making the forms available to him. In fact, the only mention of asylum over the span of the three hearings that the immigration court held is during the second hearing, and that's on December 15th, where the immigration judge asked Mr. Robles whether he entered the United States around April 10 of this year, asking for asylum, and whether he understood that he must apply for asylum within one year of his last entry, then telling him that he would have to apply, he must submit the application by April 10th of 2024. But we submit that an advisal as to the one-year deadline is insufficient to meet the three-step regulatory requirements that I just laid out, and in fact could have been construed by Mr. Robles as implying that he had until April 10th to file the application. Instead, he was ordered removed three months earlier on January 12th. Immigration judges must be held to a higher burden than this. A simple advisal as to the right to apply for asylum and asking an officer at the jail to provide him with that form is a very minimal request, and this judge did not do that. The third error in this case is the Board of Immigration Appeals requiring Mr. Robles to establish prejudice, which is not required here because the denial of counsel fundamentally affects the whole of the proceeding. This court should not indulge in nice calculations as to the amount of prejudice flowing from the denial of counsel, which is a principle well established in and outside of this circuit. Here, the agency failed to comply with the statutory and regulatory right to counsel, and therefore the agency action must be invalidated because it is tainted from its roots. Like the applicant in FRESA v. Attorney General, which is a case decided by this court in 2022, the due process claim is inextricably linked with the immigration judge's denial of the continuance request, which means that they should be treated as one and the same. In that case, this court held that the IJ's denial of the continuance was a violation of due process and of the statutory right to counsel, and while there are similar facts as in this case, I'd argue that those facts were even less egregious than the facts here. So there, the time period between FRESA's first oral advisal to his right to counsel and his final hearing where he was ordered removed was nearly one year. In this case, that time period is only 42 calendar days, which I said before was in the middle of the busiest holiday season of the year, and both of those applicants are detained. There, also, FRESA was aware that his final hearing would be a hearing on the merits. He was scheduled for an individual merits hearing, but here Mr. Robles was scheduled for a master calendar hearing and does not bring any implications that he would be. So what would normally be served on Mr. Robles to notify him that something was going to be a merits hearing rather than a master calendar hearing? So the notices will say on them, and I'll double check in the record, that it is scheduled for an individual merits hearing or whether it is scheduled for a master calendar hearing. So I'm looking at page 119 of the certified administrative record. You'll see that the hearing notice says, Your case has been scheduled for a master calendar hearing. Master is in all caps. If that was an individual merits hearing, it would say individual merits hearing in all caps. And just to wrap up my argument, in the alternative, we would submit that if Mr. Robles were required to show prejudice, he has done so. Showing of prejudice requires the noncitizen to show that the infraction had the potential for affecting the outcome of the proceedings, and he has shown that here. Had he been represented by counsel, Mr. Robles would have provided full testimony about the kidnapping and attack that he suffered, country conditions evidence, witness statements, criminal records, and legal arguments as to why he established eligibility for relief. I see that my time is up, Your Honor, so thank you. Thank you, counsel. We'll hear from you on rebuttal. Good morning, Honors. My name is Linda Doe, and I represent the respondent, the United States Attorney General. Here, the board's decision upholding the immigration judge's denial of petitioner's request for a third continuance, as well as its denial of petitioner's motion to remand are reasonable. As set forth in the board's decision, the board considered that the immigration judge had properly provided petitioner with the advisals as to the right to be represented by counsel of his choice at no expense to the government. The immigration judge further provided petitioner with a list of pro bono counsel and organizations which provide legal services at little to no cost. The immigration judge further provided petitioner with a reasonable and realistic period of time within which to find, confer with, and retain counsel, which he did not do. In this instance, the immigration judge granted an additional two continuances of 42 days for petitioner to find counsel, and it was a period of time greater than that advised by the attorney that petitioner had conferred with on December 15, 2023. Did the immigration judge tell Mr. Robles that he would be proceeding to an individual merits hearing rather than a master calendar hearing? The record does not reflect that the immigration had informed him that he would be proceeding to a merits hearing. However, the immigration judge had inquired as to inquired or set forth a series of questions to petitioner to confirm his removability from the United States, as well as to his reasons for coming to the United States, including with his reasons for seeking asylum. And the immigration judge properly determined that petitioner did not appear apparently eligible for any relief from removal. And what was was the immigration judge required to inform him that that he would be proceeding to an individual merits hearing? I'm not aware of that. And, you know, it's best to express requirement that a movie would be moving forward here. And we just read for one petitioner that he would be only granted one more continuance within which to find counsel. And in the Second Circuit and had a little disloyal versus INS, the immigration, the court held there. There was no error by the immigration judge to proceed without an express waiver where the immigration judge had granted petitioner to continuances, totaling 26 days to do so, explaining that petitioner's choice was between proceeding with or without counsel, not hearing and no hearing. And that's similar to the facts here, Your Honor. Petitioner was forewarned that only one more condition went to find counsel would be afforded. And that's during the December 15th, 2023 hearing. Additionally, petitioner, as the board noted in its denial of petitioner's motion for remand, petitioner with assistance of counsel had filed an asylum application and declaration, and nonetheless still failed to establish prima facie eligibility for relief from removal. Petitioner did not show that he had established past persecution or will find a future persecution on account of a practiced ground, where his claim was based on a single incident of harm where he was kidnapped and assaulted by unknown assailants for unknown reasons. And that's set forth by the evidence in the record. Petitioner further failed to show that he was prima facie eligible for voluntary departure under 1229CB. And did not present evidence showing that he had not been convicted of a disqualifying offense or that he warranted relief as a matter of discretion in light of his pending charges for aggravated assault and possession of a weapon. In light of these reasons, petitioner did not show that the board's decision was arbitrary, capricious or contrary to the law. As petitioner argued, petitioner claims that 42 days was not a reasonable and realistic amount of time. However, set forth by the facts of this particular case, petitioner had over seven months between the issuance of the Notice to Appear and his initial hearing within which to find counsel. As set forth in the Notice to Appear, the Notice to Appear informed petitioner of the charges against him, informed him of the right to choice of counsel, as well as provided him with a list of pro bono attorneys and organizations. The Notice to Appear further indicated that advisers were provided in the Spanish language and that no hearing would be held within 10 days of the Notice to Appear to afford petitioner an opportunity to secure counsel prior to his initial hearing. Accordingly, petitioner had more than an ample amount of time within which to find counsel and he could have but did not do so. Additionally, contrary to petitioner's contention that he was detained, petitioner was not detained for the full length of his rule proceedings. Petitioner was not detained until petitioner was at liberty for roughly five months until his arrest for aggravated assault and weapons possession on September 30, 2023. Thereafter, on November 8, 2023, the Immigration Court notified petitioner of an impending hearing for December 1, 2023, three weeks later. Again, during that time, there's no indication that petitioner had made to seek counsel or file an asylum application. On December 1, 2023, petitioner appeared pro se and requested a contingency with which the Immigration Court judge granted. On December 15, 2023, petitioner appeared again without counsel, stating that he had discussed this case with an unnamed female attorney from New York who advised him to request a week or 20 days within which to secure counsel. The Immigration Judge granted him 28 days. More than that advised. Petitioner has not shown that he was not accorded a realistic and reasonable opportunity to appear with counsel. Again, to the sense that petitioner argues that he was not properly advised as to the right to apply for asylum, the Immigration Judge properly presented petitioner with a series of questions, determined his apparent eligibility for such relief, and he did not convey his eligibility. Again, also, petitioner did not establish prejudice by it, where he had submitted an asylum application and declaration with his motion for remand and did not demonstrate prima facie eligibility for such relief. Counsel, unless you have anything further? No, Your Honors. Accordingly, the government costs that the court deny the petition for review and rest on its brief. Thank you, Counsel. Thank you. Thank you, Your Honors. So I would like to respond to four points by opposing counsel. The first is that the case raised by opposing counsel Hidalgo Dissa in the Second Circuit is distinguishable for several reasons. First, in that case, the Immigration Judge expressly warned the respondent of the consequence of not having an attorney by the next court date, which is important here and was not done to Mr. Robles. And second, the Immigration Judge in that case actually adjourned the proceeding an additional month after the third hearing, which effectively gave him more time, in essence, granting his continuance, and also was a hearing on that 212C waiver, which gave him the opportunity to present an application for relief. But in this case, Mr. Robles was not given the opportunity to present an application for asylum or withholding of removal or relief under the Convention Against Torture. The second point that I'll address is that the BIA misapplied the prima facie standard in denying the motion to remand here in focusing on entirely irrelevant parts of Mr. Robles's eligibility, because the prima facie standard is a low standard. It's a threshold eligibility, and Mr. Robles had established such. The third point that I'll raise is that Mr. Robles was, in fact, eligible for voluntary departure. There are actually two separate forms of voluntary departure. One is colloquially known as pre-conclusion voluntary departure, and the second is known as post-conclusion voluntary departure. The one that he is not eligible for is post-conclusion voluntary departure, which is the one that the government cites in its brief. But he is eligible for pre-conclusion voluntary departure, which requires him to request it before his final hearing, concede removability, waive or withdraw his applications for relief, show an intention, and money to leave the United States, and demonstrate good moral character. And the last point that I'll raise, Your Honors, is that the notice to appear does not have the advisals regarding the right to counsel and the right to apply for asylum in Spanish. The only advisal that is read to Mr. Robles on the notice to appear in Spanish is to the time and date of his or her proceeding. And that is at the bottom of, this is administrative record, page 147, the notice to appear says, the alien was provided oral notice in the Spanish language of the time and place of his or her hearing and the consequences of the failure to appear as provided in the act. It does not say that those advisals were also about the right to counsel and the right to apply for asylum. So we are asking for a remand here to give Mr. Robles the opportunity to apply for relief when she is eligible through counsel. Thank you, Your Honors. Thank you, counsel, and the case is submitted.